# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

EDWARD LOCKETT, JR.,                          :

                  Plaintiff,

      -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.          :

Case No. 3:11-cv-372

District Judge Walter Herbert Rice
Magistrate Judge Michael R. Merz

---

# REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v.*

*Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986).  Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988);  *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole.  *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978);  *Houston v. Secretary of Health and Human Services*, 736 F.2d 365  (6th Cir. 1984);  *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984).  However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.  *Garner, supra.*  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion.  *Elkins v. Secretary of Health and Human Services*, 658 F.2d  437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy.  42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an

application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the

Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff first filed an application for SSD in November, 2003, alleging disability from September 22, 2003, and the Commissioner denied that application at the hearing level on December 14, 2005. See PageID 172.  Plaintiff filed an application for SSD in July, 2006, and an application for SSI in December, 2007, alleging disability from February 1, 2003, due to left hand nerve damage, right rotator cuff, bulging disk in the back, and varicose veins in the right leg.  PageID 276-79; 292-94; 325.  The Commissioner denied Plaintiff's applications initially and on reconsideration. See PageID 167, 168.  Administrative Law Judge Thomas McNichols held three hearings following which he determined that Plaintiff is not disabled.  PageID 55-95; 96-125; 126-49; 31-43.  The Appeals Council denied Plaintiff's request for review, PageID 24-27, and Judge McNichols' decision became the Commissioner's final decision.  See *Kyle v. Commissioner of Social Security,* 609 F.3d 847, 854 (6th Cir. 2010).

In determining that Plaintiff is not disabled, Judge McNichols found that he has severe chronic low back pain, chronic right shoulder pain, history of varicose veins, and a recent history of depression,  but that he does not have an impairment or combination of impairments that meets or equals the Listings.  PageID 34, ¶ 3; PageID 35, ¶ 4.  Judge McNichols also found that Plaintiff has the residual functional capacity to perform a limited range of sedentary work.  PageID 36, ¶ 5. Judge McNichols then used section 201.21 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing.  PageID 41, ¶ 10.  Judge McNichols concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act.  PageID

4

43.

As an initial matter, the Court notes that Plaintiff waived his right to representation and proceeded unrepresented at the administrative hearings. PageID 57, 98-99; 128; 248; 269. In addition, Plaintiff is proceeding *pre se* in this Court. See, *e.g.,* Doc. 2, 8. Pleadings drafted by a *pro se* litigant are held to less stringent standards than formal pleadings drafted by lawyers, and the Court has therefore liberally construed those pleadings. *See Williams v. CSX Transportation Co., Inc.* 643 F.3d 502, 510 (6th Cir, 2011), citing *Federal Exp. Corp. v, Holowecki,* 552 U.S. 389, 402 (2008); see also, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *McNeil v. United States,* 508 U.S. 106, 113 (1993).

The record contains a copy of Plaintiff's treatment notes from the Good Samaritan Health Care facility dated February 1995 through March 2011. See, *e.g.,* PageID 520-43; 678-89. Those notes reveal that Plaintiff received treatment at Good Samaritan for various medical conditions and complaints including right shoulder pain, right distal leg pain, varicose veins, rotator cuff impairment, erectile dysfunction, and low back pain. *Id.*

Plaintiff underwent a surgical repair of an injury to his left hand on October 12, 2003, which Dr. Littlefield performed. PageID 425-30. Subsequently, Dr. Littlefield reported that Plaintiff was able to return to work, but was limited to lifting no more than five pounds and could not perform repetitive forceful gripping activity with his left hand. PageID 487-94. In January, 2005, Dr. Littlefield reported that Plaintiff had excellent range of motion and he opined that Plaintiff was able to perform unlimited activities. *Id.*

On October 18, 2003, an MRI of Plaintiff's right shoulder revealed a full thickness tear of the supraspinatus component of the rotator cuff without evidence of muscle atrophy and

possible bursitis.  PageID 431.

Plaintiff participated in  physical therapy October, 2003, through  January 2004 for treatment of his shoulder impairment which had been ordered by treating physician Dr. Cook ordered.  PageID 435-38.  When Plaintiff completed the course of physical therapy treatment, it was noted that he continued to complain of pain, but his right shoulder range of motion had improved. *Id.*  On June 8, 2004, Dr. Cook reported that Plaintiff would be able to return to work on June 22, 2004.  PageID 442.

The record reveals that  Plaintiff has received treatment for bilateral varicose veins at various facilities including  the Samaritan Vascular Institute, Grandview/Southview Hospitals, Preferred Heart & Vascular Specialists, and Varicose to Perfect.  PageID 446-55; 496-97; 555-56; 571-87; 591-97; 655-65.   The notes from those facilities reveal that Plaintiff was treated with compression stockings.  *Id.*   In 2009, Plaintiff underwent a laser treatment of his right great saphenous vein without complications.  *Id.*

The  record  contains  office  notes  from  treating  physician  Dr.  Nenonene  dated December 2004 through September 2005.  PageID 463-85.  Those notes reveal that Dr. Nenonene treated Plaintiff for various medical condition and complaints including right shoulder pain, right foot pain, left  hand pain status post surgery in 2003, neck pain, and varicosities.  *Id.*  On May 30, 2007, Dr. Nenonene reported that Plaintiff's abilities to stand and walk were affected, that he could perform those activities for four hours out of eight hours, his abilities to lift and carry, push, pull, and handle were limited, and that he was unable to perform fine and gross manipulation.  *Id.*  Dr. Nenonene also reported that Plaintiff's gait was slow.  *Id.*

A lumbar spine MRI performed on March 27, 2006, revealed minimal disc bulging

with a possible annular tear at L5-S1.  PageID 495.

Examining physician Dr. Vitols reported on October 30, 2006, that Plaintiff complained of having constant right shoulder achiness with an inability to raise his arm because of the pain, left hand pain with stiffness and achiness, cold intolerance, generalized low back pain with an inability to sit, stand, or walk more than for fifteen to twenty minute intervals, intermittent right leg pain brought about by activity, and daily neck discomfort with associated stiffness. PageID 498-508.  Dr. Vitols also reported that Plaintiff had an unaltered gait, his right shoulder was lower than the left, he had a generalized curve of the dorsolumbar spine and a list to the right, there was no AC joint tenderness or tenderness of the glenohumeral joint, both shoulders revealed restricted active range of motion more on the right than the left, and that there was definite weakness in all planes on the right.  *Id.*  Dr. Vitols noted that Plaintiff displayed  positive Hawkins signs with crepitus, limited passive motion on the right, hypersensitivity through the forearm, a lunar drift with weakness of abduction on the left, general weakness of the left hand and wrist to pinch and grip, normal reflexes on the right and left, and strong and equal muscle strength.  *Id.*  Dr. Vitols noted further that there was moderate myospasm to palpation of the dorsolumbar spine, restricted lumbar ranges of motion, that Plaintiff was able to heel-toe walk, and his straight leg raising was negative.  *Id.*  Dr. Vitols identified Plaintiff's diagnoses as status post vascular and tendon repair left hand, possible RSD with chronic pain and weakness, cervical and lumbar chronic sprain and strain, rotator cuff tear right shoulder with adhesive capsulitis, hypertension per history, and depression per history.  *Id.* Dr. Vitols opined that Plaintiff's work capabilities and tasks of daily living were "affected accordingly."  *Id.*

An August 6, 2007, MRI of Plaintiff's right shoulder revealed findings suggestive

7

of a small full thickness rotator cuff tear and a concomitant, small intramuscular ganglion extending to the musculotendinous junction of the supraspinatus. PageID 544-45.

   The record contains a copy of treating physician Dr. Martinez' office notes dated July 30 to October 29, 2007. PageID 546-50. Those notes reveal that when Dr. Martinez first evaluated Plaintiff he noted that Plaintiff had been diagnosed with a tear of the right shoulder rotator cuff five years ago, he was going to have surgery to repair it but cut his left hand and has not regained sensory on the fourth and fifth fingers of the hand, and that he was wondering how he could have surgery on his right shoulder if he doesn't have a functioning left hand. *Id.* Dr. Martinez noted in September, 2007, that Plaintiff had a positive MRI of the right shoulder, that he didn't have insurance or a job, and that he would have to have surgery before he could consider going back to work. *Id.* In October, 2007, Dr. Martinez noted that Plaintiff declined to have intraarticular injections and that he was waiting for some insurance coverage. *Id.*

   Plaintiff consulted with Dr. Nalamada at the Pain Clinic at the Dayton Outpatient Center on March 10, 2009. PageID 610. Dr. Nalamada reported that Plaintiff's diagnoses were chronic low back pain secondary to bilateral facet arthropathy and he recommended, *inter alia,* physical therapy, a bilateral facet injection series, and medication. *Id.*

   A March, 2009 MRI of Plaintiff's lumbar spine revealed mild broad based disc bulge at L5-S1, multilevel facet and ligamentous hypertrophy at L3-4, L4-5, and L5-S1, and no evidence of focal disc herniation or central canal stenosis. PageID 557.

   Dr. Kleather of the Good Samaritan Health Center reported on September 11, 2009, that Plaintiff was not able to perform any manual labor secondary to his many medical problems including chronic back, lower extremity pain, right shoulder and rotator cuff injury, and varicose

veins and that the duration of the conditions should preclude Plaintiff from manual labor for a minimum of six months.  PageID 560.  On September 25, 2009, Dr. Kleather reported that Plaintiff should not be required to stand or sit for extended periods of time without a break  "every 10-15 minutes per hour", that he should lift no more than ten pounds, and that these limitations should be in place for the next six months.  PageID 559.

On September 25, 2009, Dr. Sinnathamby of Varicose to Perfect reported that Plaintiff had been his patient since October 2008, he had performed one procedure for Plaintiff's varicose veins and planned additional procedures, and that Plaintiff had difficulty standing, walking, and sitting.  PageID 530.  Dr. Sinnathamby also reported that due to his severe leg and back pain, Plaintiff was able to stand and sit for about twenty minutes at a time as long as he was alternating, walk from twenty to thirty minutes as a time, and sit for about twenty minutes.  *Id.*

Dr. Dajani of the Good Samaritan Health Center reported on August 8, 2009, that Plaintiff had chronic low back pain, right shoulder pain, right rotator cuff tear, and varicose veins, his prognosis was poor for his back without treatment, and that he had limited range of movement and decreased strength in his right upper extremity.  PageID 564.  On October 2, 2009, Dr. Dajani reported that Plaintiff had chronic back pain, right shoulder pain with rotator cuff tear, and varicose veins, that he was getting injections for his shoulder, and that he had undergone a procedure for his varicose veins and was scheduled for more.  PageID 563.  Dr. Dajani also reported that Plaintiff was able to stand and sit for twenty minutes at a time as long as he alternated position and was able to walk for twenty to thirty minutes, but then had to sit for twenty minutes.  *Id.*  Dr. Dajani opined that Plaintiff was unable to do manual labor secondary to his medical conditions and that his limitations would last indefinitely unless surgery or other procedures were performed.  *Id.*

9

Dr. Finnan of the Medical Surgical Health Center reported on September 8, 2009, that Plaintiff had right rotator cuff tear and that he was unable to work in a manual labor-type position. PageID 568.

An October 5, 2009, x-ray of Plaintiff's bilateral knees revealed, at worst, mild abnormal findings of the right patella. PageID 565.

Dr. Sinnathamby reported on February 4, 2010, that he first treated Plaintiff in October 2008 at which time he had varicose veins with significant problems with his legs, that he had undergone a laser treatment with some improvement, but that he continued to have a significant amount of pain in his legs. PageID 571. Dr. Sinnathamby also reported that a significant component of Plaintiff's pain was due to varicose veins and that he could be treated effectively with either stockings or further procedure. *Id.*

On February 7, 2010, Dr. Dajani reported that Plaintiff wanted a letter stating that he was currently disabled and unable to perform any manual work with no time limit for the disability. PageID 588. On February 24, 2010, Dr. Dajani reported that Plaintiff had multiple medical problems that rendered him disabled and unemployable including chronic back pain secondary to bilateral facet arthropathy, he had functional limitations including but not limited to pushing, pulling, climbing, standing, walking, bending, lifting, sitting, and carrying, and that he also had varicose veins and a right shoulder rotator cuff tear. *Id.*

Plaintiff received treatment for back pain at Dayton Interventional Radiology during the period July 9, 2010, to January 31, 2011. PageID 605-08; 667-77. At the time Plaintiff first saw Dr. Syed, the physician noted that Plaintiff complained of 10/10 pain and that he had decreased sensation to vibration within the bilateral lower extremities. *Id.* Dr. Syed recommended a TENS

unit.  *Id.*  Over time, Dr. Syed noted that Plaintiff obtained some relief from a TENS unit and Lidoderm patch.  *Id.*  Dr. Syed eventually recommended that Plaintiff seek treatment at Ohio State University for insertion of a spinal cord stimulator.  *Id.*

    Examining physician Dr. Vitols reported on November 8, 2010, that Plaintiff had multiple body complaints including constant low back pain that radiates into both lower extremities and is unrelenting, right shoulder pain and difficulty raising his arm at or above shoulder height, left hand stiffness and coldness, knee instability, memory loss, and episodes of confusion.  PageID 629-44.  Dr. Vitols also reported that Plaintiff had intact sensory function,  was unsteady at station, had full range of cervical spine motion with no palpable spasms, and that he had no cervical tenderness. *Id.*  Dr. Vitols noted that Plaintiff's right shoulder was globally tender with restricted and painful motion, he had positive supraspinatus loading and Hawkins sign, palmar and dorsal tenderness of the left hand, and that his left hand was cooler to the touch than the right.  *Id.*  Dr. Vitols also noted that Plaintiff would not actively demonstrate any ability to bend or extend the lumbar spine and reported diffuse tenderness throughout the lumbar spine to palpation, he did not have any myospasm, his straight leg raising was negative, there was no atrophy, and his reflexes were normal. *Id.*  Dr. Vitols identified Plaintiff's diagnoses as chronic lumbosacral sprain with strain with multiple level facet arthropathy as per records, rotator cuff tear with impingement right shoulder, chondromalacia patellofemoral joints right and left, hypertension per history, and memory impairment and depression per history.  *Id.*  Dr. Vitols opined that Plaintiff was impaired with respect to his ability to use his right upper extremity and bend or twist at the waist on a regular basis due to facet joint arthropathy.  *Id.*  Dr. Vitols also opined that Plaintiff was able to frequently lift up to ten pounds and up to twenty pounds occasionally, carry up to ten pounds occasionally, sit for four

hours and stand and walk each for two hours in an eight hour day and sit, stand, and walk each for thirty minutes each without interruption, that he required the use of a cane and could carry small objects while using the cane, and was able to occasionally use his right hand to reach and push/pull. *Id.* Dr. Vitols noted that Plaintiff used a walker on a regular basis and claimed he was unable to ambulate without assistive devices. *Id.*

The record contains a copy of Plaintiff's treatment notes from Daymont Behavioral Healthcare dated November 12 to December 17, 2010. PageID 646-53. Those records reveal that Plaintiff's diagnosis was identified as depression and he was assigned a GAF of 50. *Id.* The evaluator noted that Plaintiff's mood was depressed, his affect with constricted, he was anxious, and that he was irritable. *Id.*

Dr. Raju of the Good Samaritan Health Center reported on December 30, 2010, that Plaintiff had been receiving treatment regularly for chronic back pain, the pain was being managed primarily by a pain specialist, he was using a TENS unit, and that his current problems included back pain, history of varicose veins, and history of right shoulder cuff repair. PageID 654.

In support of his [Statement of Specific Errors], Plaintiff submitted additional medical evidence. (Doc. 8, Attachments thereto; PageID 700-08). In support of his Reply, Plaintiff has submitted one hundred ninety-nine pages of additional medical evidence. (Doc. 11, Attachments thereto; PageID 732-933).

In his [Statement of Specific Errors], Plaintiff essentially argues that the Commissioner erred by failing to find that he is disabled because the record contains opinions from his physicians that he is, in fact, disabled. (Doc. 8).

"In assessing the medical evidence supporting a claim for disability benefits, the ALJ

must adhere to certain standards." *Blakley v. Commissioner of Social Security,* 581 F.3d 399, 406 (6th Cir. 2009). "One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Id.*, *quoting*, *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544, (6th Cir. 2004), *quoting,* 20 C.F.R. § 404.1527(d)(2).

"The ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley,* 581 F.3d at 406*, quoting, Wilson,* 378 F.3d at 544. "On the other hand, a Social Security Ruling[1] explains that '[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Blakley, supra, quoting,* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). "If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment

---

FN 1. Although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent, final opinions and orders and statements of policy" upon which the agency relies in adjudicating cases. 20 C.F.R. § 402.35(b).

relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,*582 F.3d at 406*, citing, Wilson,* 378 F.3d at 544*, citing* 20 C.F.R. § 404.1527(d)(2).

"Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Blakley,* 581 F.3d at 406, *citing,* 20 C.F.R. §404.1527(d)(2). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Blakley,* 581 F.3d at 406-07,*citing,* Soc.Sec.Rule 96-2p, 1996 WL 374188 at *5. "The *Wilson* Court explained the two-fold purpose behind the procedural requirement:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.

*Blakley,* 581 F.3d at 407*, citing, Wilson,* 378 F.3d at 544. "Because the reason-giving requirement exists to ensure that each denied claimant received fair process, the Sixth Circuit has held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record.'" *Blakley, supra, quoting, Rogers v. Commissioner of Social Security.,* 486 F.3d 234, 253

(6th Cir. 2007)(emphasis in original).

　　　　　In rejecting the opinions of Plaintiff's treating physicians that Plaintiff is disabled, Judge McNichols determined that those opinions were not well-supported by medically acceptable clinical laboratory diagnostic techniques and were inconsistent with other evidence of record. PageID 36-38.

　　　　　As noted above, Dr. Nenonene essentially reported in May, 2007, that Plaintiff's abilities to perform work-related physical activities were affected by his impairments and that he was able to perform such activities for only four hours in an eight-hour day.  However,  Dr. Nenonene did not provide any objective clinical findings to support his opinion.  Indeed, Dr. Nenonene reported that, at worst, Plaintiff's gait was slow.  Similarly, a review of Dr. Nenonene's clinical notes reveals that they are primarily a recitation of Plaintiff's subjective complaints and contain few, if any, objective findings. PageID 465-85.  Finally, Dr. Nenonene treated Plaintiff for only nine months and offered his opinion  more than eighteen months after he had last seen Plaintiff. PageID 463.

　　　　　Dr. Kleather of the Good Samaritan Health Center reported in September, 2009, that Plaintiff was not able to perform any "manual labor" secondary to his many medical problems. However,  Dr. Kleather did not support his opinion with any objective clinical findings and merely listed Plaintiff's various diagnoses.  Nevertheless, even if Dr. Kleather's opinion were entitled to great weight, he opined that the limitations he had placed on Plaintiff would last for the next six months. PageID 559-60.  Clearly, that limitation does not satisfy the one-year duration requirement of the Act.  In addition, a review of Plaintiff's treatment notes from the Good Samaritan Health Center reveals that Plaintiff's treating sources primarily repeated Plaintiff's subjective complaints

and documented, at worst, tenderness of Plaintiff's left shoulder, decreased ranges of motion, and few, if any, neurological findings.  See, *e.g.,* PageID 520-43; 678-89.

Similarly, Dr. Dajani of the Good Samaritan Health Center failed to support with clinical findings his opinion that Plaintiff was unable to do manual labor and had  severely restricted abilities to perform work-related activities.  As is Dr. Kleather's opinion, Dr. Dajani's opinion is limited to an ability to perform "manual labor".   That limitation notwithstanding, in offering his opinion, Dr. Dajani simply recited Plaintiff's diagnoses as well as Plaintiff's subjective complaints to support that opinion.  PageID 563, 564, 588.  Again, Plaintiff's treatment notes from the Good Samaritan Health Center fail to contain objective clinical findings that support Dr. Dajani's opinion.

Although Dr. Finnan of the Medical Surgical Health Center opined that Plaintiff was "unable to work in a manual labor-type position" because of his chronic right rotator cuff tear, Dr. Finnan provided absolutely no clinical findings to support his opinion.  PageID 568.  Indeed, the records which accompany Dr. Finnan's opinion contain no clinical findings.  PageID 566-69.

 These physicians' opinions are inconsistent with Dr. Vitols' findings and opinion, the reviewing physicians' opinions, and with Plaintiff's self-reported activities.  Although Dr. Vitols noted that Plaintiff exhibited various positive clinical findings, he did not conclude that Plaintiff is disabled from all work activity.  In fact, Dr. Vitols determined that Plaintiff is capable of performing a limited range of light work.  PageID 629-44.  Similarly, the reviewing physicians of record opined that in spite of Plaintiff's impairments, he is capable of performing a range of light work.  See PageID 511-18; 519.  Finally, Plaintiff's self-reported activities are inconsistent with any opinions that Plaintiff is disabled as well as Plaintiff's allegations he is disabled.  For example, Plaintiff reported that he drives, watches television, reads, takes his mother to the store, and performs

household chores.  Moreover, the record reveals that since his alleged onset date, Plaintiff has worked for periods of months at a time. See, *e.g.,* PageID 377, 393.  Finally, Plaintiff has stated that he would be willing to train for a trade if someone made such an offer to him.  PageID 410.

The record does reveal that Plaintiff has had a long-term shoulder impairment. However, the Commissioner took that impairment into consideration and limited Plaintiff to performing a limited range of sedentary work that includes, *inter alia,* no more than occasional lifting above his shoulder, occasional pushing and pulling, and no climbing.  PageID 36, ¶ 5.  In addition, while the record contains documentation of Plaintiff's history of varicose veins, it also reveals that those varicosities were treated successfully.

While the record may arguably contain evidence which supports Plaintiff's claim that he is totally disabled, the issue is whether the record contains evidence to support the Commissioner's decision that Plaintiff is not disabled under the Act.  *Richardson,* 402 U.S. 401. The Commissioners decision is supported by such evidence.

As noted, Plaintiff submitted additional evidence in support of his [Statement] and his Reply.   However, the Court is not permitted to review that evidence for purposes of substantial evidence review of Judge McNichols' decision. *See Bass v. McMahon,* 499 F.3d 506, 512-13 (6th Cir. 2007), *citing, Cline v. Commissioner of Social Security,* 96 F.3d 146, 148 (6th Cir. 1996) (citation omitted).  The Court may, however, review the evidence for the purpose of determining whether the matter should be remanded for consideration of the evidence by the Commissioner.

The remand provision of 42 U.S.C. §405(g) provides that the court may order a case remanded to the Commissioner for further consideration "only upon a showing that there is new evidence which is material and there is good cause for the failure to incorporate such evidence into

17

the record in a prior proceeding." 42 U.S.C. §405(g); *see also, Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1233 (6th Cir. 1993).

The court may review new evidence submitted after the Administrative Law Judge's decision for the limited purpose of determining the appropriateness of a remand to the Commissioner under sentence six of 42 U.S.C. §405(g). *Wyatt v. Secretary of Health and Human Services,* 974 F.2d 680, 685 (6th Cir. 1992). Such remand is appropriate, however, only if the court finds that the evidence is new and material and there is good cause for the failure to incorporate that evidence into the record of the prior proceeding. *Sizemore v. Secretary of Health and Human Services,* 865 F.2d 709, 711 (6th Cir. 1988).

To establish materiality, the plaintiff must show, "a reasonable probability that the Commissioner would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore,* 865 F.2d at 711 (citations omitted). New evidence on an issue already fully considered by the Commissioner is cumulative and is not sufficient to warrant remand of the matter. *Carroll v. Califano,* 619 F.2d 1157, 1162 (6th Cir. 1980). Additional evidence is material only if it concerns the plaintiff's condition prior to the Commissioner's decision. *Oliver v. Secretary of Health and Human Services,* 804 F.2d 964, 966 (6th Cir. 1986). Evidence of a subsequent deterioration or change in the plaintiff's condition after the administrative hearing is deemed immaterial. *Wyatt,* 974 F.2d at 685, *citing, Sizemore,* 865 F.2d at 712.

To show good cause, plaintiff must present some justification for the failure to have acquired and presented such evidence to the Commissioner for inclusion in the record during the hearing before the Administrative Law Judge. *See, Willis v. Secretary of Health and Human Services,* 727 F.2d 551 (6th Cir. 1984); *see also, Oliver, supra.* Additional evidence generated for

18

the purpose of attempting to prove disability in contrast to evidence produced by continued medical treatment does not meet the good cause requirement of the Act. *Koulizos v. Secretary of Health and Human Services,* No. 85-1654 (6th Cir. Aug. 9, 1986) (table 802 F.2d 458).

   This Court has reviewed the evidence that Plaintiff has submitted in support of his [Statement] and in support of his Reply and concludes that none of the evidence is material for purposes of remand.  Specifically, the evidence which Plaintiff submitted in support of his [Statement], address matters which the Commissioner has already considered including Plaintiff's varicosities and the improvement in his venous system after treatments and his back impairment. In addition, the newly submitted evidence includes physicians' opinions as to Plaintiff's residual functional capacity which are not supported by objective findings, physical therapy records and reports which do not contain any clinical findings or descriptions of functional limitations[2], and records and reports from a mental health therapist at DayMont which essentially contain recitations of Plaintiff's subjective complaints[3].  Further, many of the additional records which Plaintiff has submitted in support of his Reply post-date Judge McNichols' May 31, 2011, decision. Conversely, many of them pre-date Judge McNichols' decision and are either already a part of the record or Plaintiff has offered no justification for not including them in the record before Judge McNichols.

   Plaintiff's additional evidence includes a notice advising Plaintiff that based on his February 1, 2008, application, he was eligible for Ohio Disability Financial Assistance beginning November 21, 2007, and eligible for Medicaid for the Disabled beginning September 1, 2007.

---

  [2] The Court notes that a physical therapist is not an acceptable medical source. See 20 C.F.R. § 404.1513, 20 C.F.R. § 416.913.

  [3] The Court also notes that a mental health therapist is not an acceptable medical source. See 20 C.F.R. § 404.1513; 20 C.F.R. § 416.913.

However, the Commissioner is not bound by findings made by any non-governmental agency or any other governmental agency about whether an individual is disabled.  20 C.F.R. § 404.1504.

This Court concludes that there is not "a reasonable probability that the Commissioner would have reached a different disposition of the disability claim if presented with the new evidence." See *Sizemore, supra.*   Therefore, to the extent that Plaintiff's submission of the additional evidence in support of his [Statement] and in support of his Reply is construed as a motion for remand for the consideration of the additional evidence, such motion is denied.

The Court's duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence.  *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982).  The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939).  The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

May 1, 2012.

s/ **Michael R. Merz**
United States Magistrate Judge

J:\Social Security\Lockett_SSD&SSI.wpd

## NOTICE  REGARDING  OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), ( C), or (D) and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).